RICHARD DRUMMOND
by his testament devised as followeth : ‘ i give and bequeath to my wife Catharine Drummond 4 the land left me by my lather Richard Drummond, lying on ‘ Hunting creek, containing 600 acres, including the hull oí < Haliiuoon island, during her widowhood ; and i also give my ‘ said wife the use of my watermill, lying on the head of Hunt-Hug creek, during her widowhood, item i give and bequeath, t unto my daughter Alicia Drummond my ahovesaid plantation, c lying on Hunting creek, after the lime limited to her mother, -"to her and to her heirs, and i also give my said watermill to my daughter Alicia, to her and to her heirs, item i give *174 ‘ and bequeath to my daughter Anne Drummond the plantation ‘ which my father bought of Jacob Litchfield, to her and to her ‘heirs, and i also give my daughter Anne a negro boy named ‘ Jamey. and in case my two children Alicia and Anne Drum‘mond should die without heirs of their bodies then i give my * said wife my plantation, lying on Hunting creek, during her ‘ life, and after her death to my brother Spencer Drummond, ‘ray will is that my wife Catharine have all my estate till the ‘ first child marries or arrives to the age, twenty one years, and ‘ my will is that there shall be an equal division of my estate ‘ and settlement..’
The writing purporting to be this testament begins with these words, ‘ i Richard Drummond of Accomack county, &c.’ do ‘make and ordain this my last will and testament, &c.,’ and concludes with these words, ‘ revoking all other wills before ‘ made, in testimony whereof i have hereunto set my hand ‘and affixed my seal, this day of april, in the year ‘of our lord 1744. signed, sealed, published, and delivered ‘ in presence of.’ no name is written under it.
Richard Drummond died in íebruary, 1750-1. probate of this writing for his testament was obtained in October, 1765, when ihree witnesses, before the court of Accomack county, to whose jurisdiction the matter belonged, deposed that they believed it to be all of his handwriting, with which they declared themselves to have been well acquainted.
Administration of the goods, chatels and credits of Richard Drummond, on the supposition of his intestacy, was committed ' to Catharine his widow, the fhother of the plaintiff Anne and her sister, the daughter Alicia died an infant, intestate, and ' not having been married, between three and four years after the death of her father.
In 1756, the widow was married to Ralph Justice, who died in her lifetime, in december, 1759, having made his testament, whereof he appointed the defendent Levin Teackle executor.
The plaintiff Anne, the other daughter of Richard Drummond, in may, 1759, being then an infant, was married to William Justice, son of the before named Ralph Justice, and after his death, which happened in april, 1762, was married in novetnber, of the same year, whether then an infant or of full age doth not appear, to her present husband.
Catharine Drummond, at the time of her marriage with Richard Drummond, was the widow of John Shepherd, to whom she had borne two daughters, Margaret and Elizabeth, who were married, the former to the defendent Edward Ker, and the latter to John Harmanson, the testator of the other defendents William Harmanson and Henry Harmanson.
*175 The plaintiffs commenced their suit, first against the defendent Levin Teackle alone, by their bill filed in march, 1767, stating Richard Drummond to have died intestate, and alleging that Ralph Justice, after his marriage with the mother of the plaintiff Anne, entered into the lands and took possession of the slaves and other chatels of Richard Drummond, and received the profits thereof, and converted to his own use part of tho personal estate, and demanding an account of those profits and personal estate, and praying a decree for the plaintiff Anne’s proportions of them, or so much as had not been accounted for to her former husband William Justice.
The defendent, by his answer to that bill, admitted that the daughter Alicia’s part of her fathers estate had been divided into lour parts, and distributed among her mother, the plaintiff Anne, and her two half sisters, in such manner as he was advised the law directed ; and alleged that, Ralph Justice, whose possession of Richard Drummonds lands and other estate, from some time in 1756 until may, 1759, is admitted, delivered up the whole estate real and personal to William Justice, after the intermarriage of him and the plaintiff Anne, about the time last mentioned ; which delivery, as the defendent insisted, discharged his testator from obligation to render any further account of that estate or its profits.
That cause was set for hearing in fbbruary, 1770. 44 of november, I78á, an order was made, by consent of partios, appointing commissioners to state and report an account of such part of Richard Drummonds estate as came into possession of his widow, before her marriage with Ralph Justice, and also of such part of the estate of Richard Drummond as came into possession of Ralph Justice, after his marriage with Catharine Drummond, and of the nett profits of the whole estate from the death of Richard Drummond, and an account of such part of Catharine Drummonds estate as carne to the possession of Ralph Justice, after his marriage aforesaid, and of the disbuisements and applications by Ralph Justice, or his executor, in discharge of debts and in delivery thereof to persons claming the same.
Similar orders, subsequent to this, appointed other commissioners, who made reports, upon which was no decree.
In may, 1787, the plaintiffs filed an amended bill, making the other delendents parties.
In the amended bill the plaintiffs set forth the testament of Richard Drummond, stated that it had been in possession of Catharine Drummond, from the time of his death, until the year 1765, when the plaintiff Thomas Bailey procured it to be proved, and obtained a commission of administration of that testators *176 goods, chatels and credits, with the testament annexed, that . Catharine Drummond took her dower in the real, and received her distributive share of the personal, estate of her said husband, and that the share of Alicia was distributed among her mother, the plaintiff Anne, and her two half sisters ; stated the intermarriage of Ralph Justice and Catharine Drummond, his death, and appointment of an executor, and the marriages of the plaintiff Anne ; insisted that the half sisters were not intitled to any part of Alicia’s estate, and that the right of Catharine the widow, who did not renounce the benefit she might dame by the testament, to the profits of Hunting creek land, ceased by her marriage with Ralph Justice, or, if not, that the plaintiff Anne was ,-intitled to two third parts of those profits, after the intermarriage ; stated that the balance of the personal estate left by Richard Drummond, which came to the possession of Ralph Justice, amounted to 6891. 13s. 3d, the profits of the said estate, duiitig the widowhood of Catharine Drummond, that is from february, 175-, until may, 1756, to 6841. 9s. 6d, and the profits during the possession of Ralph Justice, that is, from may, 1756, until 1759, to 3721. 4s. 9d; charged Ralph Justice, aud after his death his executor, with recfeiving moneys from the debtors of Richard Drummond and Catharine Drummond, and from the tenent of a plantation, belonging to Richard Drummonds estate, for rent faud prayed the like decree as they prayed by the original bill against the deiendent Levin Teackle, and a decree against the other defendents to refund the money wrongfully received for the shares of the two half sisters.
The defeudent Levin Teackle, after admitting by answer the several facts stated in the amended bill, except the receipts of profits, debts, and rent, to so much of the bill as demanded the profits of Richard Drummonds estate demurred, insisting that, by his testament, his widow, and, in her right, Ralph Justice, after their intermarriage, were intitled to the profits ; by further answer, alleged that Ralph Justice delivered up the estate to William Justice, firmer husband of the plaintiff Anne, after their intermarriage, and that the representatives of Catharine, the administratrix of Richard Drummond, were' responsible for her transactions in that office, not the defeudent; demurred to that part of the bill, which demanded an account of monies which had been due to the said Catharine, and with receiving which the defendent and his testator were charged, and of rent, because, first, the charges were vague, secondly, the executor or administrator of the said Catharine only can properly demand that account, and, thirdly, where the land for which the rent became due lieth, or when the rent became due, is not shewn j *177 and demurred to that part of the bill which inquired after the distribution of Richard Drummonds estate, because the defendent is not stated to bo executor or administrator of Richard Drummond.
The defendent Edward Ker after by answer denying a demand from him by the plaintiffs before exhibition of their present bill, on account of any matter therein contained, and confessing himself, in right of his wife, to have received in february, 1762,531.12s. 8f- for her distributive share of Alicia Drummonds personal estate, demurred to that part of the bill, which prayed a decree against him to refund the money so received, insisting that his wife was intitled to it by the statute for distribution of personal estates undisposed by testament, and, if she were not intitled, that a demand of this nature, first made after the expiration of 27 years, ought not to be countenanced in a court of equity, and
The other defendents, executors of John Harrnanson, by their answer, relied upon the statute for limitation of actions, in bar of the demand against them.
The case was argued on the second day of march, 1793.
The validity of the writing, proved for the testament of Richard I frummond, to devise lands was not controverted, perhaps is not controvertible, the statute made in 1748 (chap. Ill of the edition in 1769, sect. YII) which required devises of lands to be written, and signed, and attested, or to be wholly written by the testator, dispensed unquestionably with attestation in the autograph, insertion of the testators name at the top hath been adjudged, and in any other part probably would be adjudged, equivalent to signature of his name at the bottom of the writing, for the purpose of signature being to indicate the author of the act, that indication in any part of the act seemeth sufficient, the testator indeed by the two last clauses in the writing sheweth an intention to sign it in presence of witnesses, but the absence of a ceremony, for signature before witnesses and their attestation were no more in this case, cannot frustrate an act defective in not one essential quality.
Upon the questions which were controverted the court delivered this
OPINION,
That the condition, annexed to the devise, by the testament of Richard Drummond, of his Hunting creek land, half of Half moon island, and a mill, to his wife Catharine, namely the continuance of her widowhood after his death, was not dis *178 charged by the subsequent devise to her of all his estate, until the elder of his children should be married, or should attain the age of twenty one years ;
Because the presumption, that the testator, who with his own hand wrote his testament, did not remember, whilst he was forming the latter devise, what was contained in the former, or that he had changed his mind, during the short time in Avhich such an act as the Avriting this testament may he performed,, seems less probable, than the presumption, that he supposed the ■condition expressed in the one Avould be understood in the other, and therefore the insertion of it in this would be an unnecessary repetition ; and that he had not changed an intention, indicated no less than three times in explicit terms, an intention originating from the contemplation, in his wifes future matrimonial alliance, if not of an effect which would more divide her affection, at least, of her inability to provide for her offspring by him so well as she might otherAvise have provided for them :
■ And altho' the wifes interest in the testators other land Avas determinable, not by her marriage, but, by another event, this-difference, which that the testator designed may he doubted, no cause for it being descernibfe, if considerable at all,, ought not .to alter that interpretation of the testament according to Avhich
The Avife Avas intitled to all the estate, to one part, if she continued a widow, and to the remainder, in either that,, or the contrary event, until the elder of the children should have been married, or, if she had not died, would have attained the age of eighteen years, when an equal division of the estate was directed to be, and the Avife could have retained her dower only— hut if she should marry again, then her tit]e by the testament to the land devised to Alicia ended and her title of dower in it remained, (a) and by which interpretation a harmony avüI he in all parts of the testament one Avith another, the reverse whereof will he effected by any other interpretation.
And that the defendent Levin Teackle, out of the estate in his hands to be administered of Ralph Justice, ought to pay to the plaintiffs two third parts of the profits of the land, devised by the testament of Richard Drummond to his daughter Alicia, made by the said Ralph Justice, after his marriage with her mother, as Avell those received by himself, as those received, after his death, by his executor, Avhich had not been accounted for with William Justice, the plaintiff Annes former husband.
*179 'The court is also of opinion that the two sisters of Alicia Drummond by her mothers first husband, John Shepherd, were ■not entitled to shares of the said Alicias personal estate, because, altho the statute, then in force for distribution of the es-.' tates which .the owners disposed not by testaments, provided, ■* if after the death of a father any of his children shall die intestate, without wife or children, in the lifetime of the mother, that every brother and sister, and the representatives of them ,-shall have an equal share with her,'5 and although all the children of one woman,by divers men, are brothers and sisters to <one another, yet in the same statute the words, ‘ and if all the' children shall die, intestate, without wife or children," in the , ■lifetime of the mother, then the portion of the child so dying " last shall he equally divided, one moiety to the mother, and the" other moiety to the next of kindred by the father,’ immediately following the words before rehearsed, so that in this case, after the death of Alicia, if the plaintiff Anne had died intestate, having never been married, her portion would unquestionably' have1 been divided between her mother and next of kindred by - her father, in exclusion of Shepherds daughters, suggest an argument which seems to prove, that by ‘ brother and sister,’ were Intended brother and sister by the same father, if the position, that the statute appointed those successors to an intestate . whom the legislature supposed his affection would have moved" him to appoint, if he had made his testament, be true, as it is said to be ; for the predilection towards a paternal uncle or aunt, or even remoter kinsfolk, in the case of the child dying last, cannot operate so powerfully, as the supposed predilection towards the sister by the father, in the present case operates to :ihe exclusion of uterine sisters from the succession ;
And consequently that the plaintiffs, in right of the wife, were intitled to one -half of the shares of Alicia Drummonds ¡personal estate, which were received by the defendents Edward Ker, and John Harmanson, the testator of the defendents William Harmanson, and Henry Harmanson, in right of their wives, the daughters of Catharine Drummond by John Shepherd, and were also entitled, if the said Catharine died intestate, to one third part of the other half; ■ '
And that the plaintiffs are not barred, by the equity of the ■statute for limitation of actions, of recovering the plaintiff Annes ■own half from the defendents Edward Ker, and William Harmanson and Henry Harmanson, unless she had attained her full age at the time of her marriage with her present husband, in which case the plaintiffs are not barred of recovering that half from the defendent Levin Teackle,
*180 Who, by his answer to the original bill, having acknowledged himself to have distributed the personal estate of Alicia Drummond among her mother and three sisters, either, if such his intromission therein were wholly unauthorised, or if the administration thereof had been committed to him, was a trustee fbr those intitled to the said Alicia Drummonds estate :
And that upon the same principle the plaintiffs are not barred of recovering from the dependent Levin Teackle the plaintiff Annes third part, if her mother died intestate, of the other half of the shares received as aforesaid by the husbands of her sisters.
And the court, overuling such of the demurrers as this opinion contravened, directed master commissioner Hay to examine, state, and settle all. accounts between the parties, according to the opinion, to inquire of the plaintiff Annes age at her marriage with the other plaintiff, and what testament her mother made, if she . made a testament, and to report these matters, as they shall appear to him, with any other matters, by himself thought pertinent or by the parties required, to be stated, to the court. ■

 The plaintiffs supposed the widow, by not renouncing the testament, to Lave been barred of dower in the land devised to Alicia, but the act of general assembly to which they allude for this, 1727, chap. IV, of the edition in 1769, sect. XXL doth not extend to lands. • •